## John Swilley v. The State.

No. 12792. Delivered December 11, 1929.
Rehearing denied State March 19, 1930.
Reported in 25 S. W. (2d) 1098.

The opinion states the case.

*Jas. P. Rogers, W. M. Holland, C. F. Stevens* and *E. A. Tully, Jr.,* all of Houston, for appellant.

*A. A. Dawson* of Canton, State's Attorney, for the State.

LATTIMORE, JUDGE.—Conviction for murder; punishment, life imprisonment in the penitentiary.

This case is in a condition of much conflict, upon its facts, and in view of our disposition of the case we deem it not necessary to discuss the testimony.

The indictment charged that appellant did voluntarily kill H. J. Hendrix by shooting him with a gun. For the first time since the passage of Chap. 274, Acts Regular Session 1927, re-defining the offense of murder,—the point is made that while it is sufficient under said act for an indictment for murder to charge that the accused did voluntarily kill, etc.,—that in cases wherein the State proposes to ask a punishment greater than five years for the offense, the indictment should allege that the killing was upon malice afore-thought. The point here made was not raised or involved in the case of Crutchfield v. State, 110 Texas Crim. Rep. 420, but if there be anything in the opinion in that case, not in line with what is herein said, it will be overruled.

Mr. Bishop's New Criminal Procedure, 2d Ed., Chap. 6, states as follows: "The doctrine of this chapter is, that every wrongful fact, with each particular modification thereof, which, in law, is required to be taken into the account in determining the punishment upon a finding of guilty, must be alleged in the indictment." And again, id. "The indictment must allege every fact and modification of fact legally essential to the punishment to be inflicted." Discussing the offense of assault, Mr. Bishop, in this same connection, says: "An assault,—being punishable in a particular way, if a statute enhances the punishment when a specified fact attends it, the greater punishment cannot be awarded unless the indictment charges such aggravating fact." That what is thus said is approved in our State appears from the opinions in Garcia v. State, 19 Texas Crim. App. 389, and Crouch v. State, 87 Texas Crim. Rep. 115.

Our statute provides that robbery in this State shall be punishable by life imprisonment, or a term of years not less than five, but that when a firearm is used in the commission of the offense, the punishment may be death or imprisonment not less than five years. It is uniformly held that the higher punishment can not be inflicted unless

the indictment specifically allege the matter made by statute the basis for the infliction of the higher penalty. Beaumont v. State, 1 Texas Crim. App. 536; Green v. State, 147 S. W. Rep. 593. In Jackson v. State, 33 Texas Crim. Rep. 288, we held that the court should not charge on robbery by the use of firearms or a deadly weapon if the indictment failed to allege such robbery. So also if it be desired to inflict a greater punishment by reason of a former conviction of the accused of like offenses, it has always been held that the indictment should plead the fact of such former conviction.

While our present statute makes murder of every voluntary killing, it is also specified in the statute that in every murder case the court shall tell the jury that unless the killing was upon malice aforethought, they can not assess the punishment at a period longer than five years; hence it is plain that murder without malice aforethought is punishable by imprisonment for not less than two nor more than five years, while murder upon malice aforethought may be punished by death or any period of imprisonment not less than two years. In other words, if the State wishes to seek a greater penalty than five years because of the presence of malice aforethought,—an indispensable element of the enhanced penalty under the new statute,—the indictment should allege that the killing was upon such malice aforethought.

There is in this record also serious complaint of argument of the district attorney, in its nature abusive, which will doubtless not occur upon another trial of this case. Attention has often been called to the fact that there is abundant room for legitimate discussion of the testimony and the law applicable, without indulging in personal abuse of the man who is at the bar of justice. We always regret the necessity of admonishing district attorneys in this regard, and of calling the attention of trial courts to the duty that devolves upon them primarily of seeing that fair limits of argument are not transgressed.

The judgment will be reversed and the cause remanded, and the attention of the State is called to the fact that if upon another trial it purposes to ask for the enhanced penalty against this defendant, a new indictment will be necessary.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*

ON STATE'S MOTION FOR REHEARING.

HAWKINS, JUDGE.—The state challenges the soundness of the conclusion reached in our original opinion that where the state seeks

a punishment of more than five years in prosecution for murder, the indictment must contain an averment that the killing was done with malice aforethought.

The solution of the question calls for construction, in part at least, of the new murder law passed by the 40th Legislature. This law is something new in the jurisprudence of the State. In fact, it is somewhat of an anomaly. It has no precedent in the common law and so far as the writer knows, no counterpart in the statutory law of any other state in the Union. Under these circumstances it is not surprising that the question now before us should have arisen, and it should not be unexpected that for the same reason many others will arise to vex the courts until the bench and bar of the state have by experience learned to operate this new piece of judicial machinery.

By Chapter 274, page 412, Acts 40th Legislature, Article 1256 of the Penal Code, defining murder, was amended to read as follows:

"Whoever shall voluntarily kill any person within this state shall be guilty of murder. Murder shall be distinguished from every other species of homicide by the absence of circumstances which reduce the offense to negligent homicide or which excuse or justify the killing."

At the same time by amendment of Article 1257 P. C., punishment for murder was fixed at death or confinement in the penitentiary for life or for any term of years not less than two. That part of our statute which had theretofore defined "manslaughter" as an offense and prescribed its constituent element was repealed in toto. However, the said Legislature did enact Article 1257a which provides that evidence of facts and circumstances of the killing and evidence showing the condition of the mind of accused might be considered by the jury in determining the punishment, thereby recognizing that the state of mind of the slayer was still something to be considered, notwithstanding "manslaughter" as a substantive offense was being wiped from our statute. If the Legislature had stopped here the question now being considered could never have arisen because one charged by indictment with having voluntarily—intentionally—killed another, would have been subject to punishment within the discretion of the jury, from two years in the penitentiary to death, regardless of whether the slayer did or did not act upon malice aforethought. The Legislature, however, was not content to leave the law in the condition resulting from the above amendments so it enacted Section 3a, of said chap. 274 as follows:

"In all cases tried under the provisions of this Act, it shall be the duty of the Court to define 'malice aforethought' and shall apply that term by appropriate charge to the facts in the case and shall instruct the Jury that unless from all the facts and circumstances in evidence the Jury believes the Defendant was prompted and acted with his malice aforethought, they cannot assess the punishment at a period longer than five years."

By the foregoing clause the Legislature clearly recognized that while all killings actuated by malice aforethought were voluntary—that a killing might be voluntary with malice aforethought absent. Section 3a is just as much a part of the present murder statute as any other portion. By its terms it thus became the law that unless one charged with killing another be shown upon trial to have been prompted by and acted with malice aforethought, his punishment could not be more than five years in the penitentiary. The whole act of the Legislature must be construed together. The meaning is just as clear as if Article 1257 had read, "The punishment for murder shall be death or confinement in the penitentiary for life, or for any term of years not less than two, provided the punishment shall in no event be more than five years unless the slayer was prompted by and acted with malice aforethought." The presence of malice afore-thought became by this article a fact issue for the determination of the jury under appropriate instructions.

The indictment in the present case charges only that appellant "did *voluntarily* kill H. J. Hendrix by shooting him with a gun"; in other words, it charged an intentional killing which may or may not have been prompted by malice aforethought. The state proposed to seek and did secure a penalty of more than five years in the penitentiary, but omitted to advise appellant by any averment in the indictment that it purposed to put him on trial for his life because of a killing done by him with malice aforethought. If this could be done in a case of this character it is contrary to previous holdings of this court as manifested by the authorities referred to in our original opinion.

A judgment in both civil and criminal cases must be supported by the proof and must follow and correspond with the pleading, which in a criminal case is the indictment. The proof permissible and the punishment allowable are always measured by the allegations of the indictment. This is axiomatic and the principle found expression in our old Code of Criminal Procedure, and has been brought forward in every succeeding Code, and is found now under Art. 397 of the present C. C. P., which reads:

"Everything should be stated in an indictment which is necessary to prove."

Unless we entirely misinterpret Section 3a of the present murder statute proof of "malice aforethought" is indispensable before punishment of more than five years may be secured; if indispensable to prove how can Art. 397 C. C. P. be complied with without averring it? The state would scarcely contend that upon an indictment which charged one with stealing property of the value of ten dollars—a misdemeanor—it would be entitled to a judgment condemning the party to be guilty of a felony because upon trial the proof showed the property to be worth a hundred dollars. It is evident that if the indictment charged felony theft and the evidence fell short of the necessary proof as to value, the indictment could only support a misdemeanor conviction. The books are full of instances. A difference between simple assault and aggravated assault may arise from the insertion or omission from the indictment of the allegation that the weapon used was a deadly weapon, but the heavier penalty allowable in case of prosecution for aggravated assault could not in any case be inflicted unless the indictment had alleged that the assault was with a deadly weapon; again the difference between assault with intent to murder and the lower grades of assault punishable by a less penalty, is that the indictment for the former must allege that the assault was with intent to kill; no matter how fully the proof might show an intent to kill the enhanced penalty for assault to murder could not be inflicted save the indictment contained the allegation that the assault was with such intent. So, one charged with assault with a deadly weapon might be punishable for a misdemeanor only, even though the proof showed that in the conflict he put out the eye of the assaulted party, but by inserting in the indictment the allegation that the assaulted party "wilfully and maliciously" put out the eye of the assaulted party and supporting that allegation by proof, an enhanced penalty of from two to ten years in the penitentiary might be inflicted. Article 1177 P. C. provides:.

"When any person is falsely imprisoned for the purpose of being removed from the state . . . such false imprisonment is kidnapping."

The same article fixes the punishment for kidnapping at confinement in the penitentiary for not less than two years nor more than five years, or by a fine not exceeding two thousand dollars. Article 1178 P. C. provides that:

"If the person so falsely imprisoned be actually removed out of the state the punishment shall be imprisonment in the penitentiary for not less than two nor more than ten years."

The offense of kidnapping is complete when the person is falsely imprisoned for the purpose of being removed from the state, but the increased punishment can not be inflicted unless the actual removal from the state is accomplished. Therefore, it could scarcely be urged that the increased punishment would be authorized in the absence from the indictment of an allegation that the party so kidnapped was actually removed from the state. (See Wilson's Criminal Forms, No. 491, and authorities cited in the notes thereunder.) Art. 1179 P. C. defines abduction as:

"The false imprisonment of a woman with intent to force her into a marriage or for the purpose of prostitution."

Art. 1182, P. C. fixes the punishment for abduction by a fine not exceeding two thousand dollars, but further provides that if by reason of such abduction a woman be forced into marriage punishment shall be confinement in the penitentiary for not less than two nor more than five years, and if by reason of such abduction the woman be prostituted the punishment shall be confinement in the penitentiary not less than three nor more than twenty years. This statute was construed in the case of DeHart v. State, 87 Tex. Cr. R. 21, 218 S. W. 1047. The indictment in that case charged the abduction of a girl for the purpose of forcing her into marriage but omitted to allege that after the abduction the marriage actually occurred. The court charged the jury that if accused abducted the girl and did thereafter force her into marriage they would find him guilty of a felony and assess his punishment at not less than two nor more than five years in the penitentiary. Judge Davidson, speaking for this court, said:

"If abduction occurs for the purpose of forcing the girl into marriage,—and that is the State's case as charged in the indictment,— the punishment would be by fine not to exceed two thousand dollars, which would be a misdemeanor, but the court here authorized the conviction for the felony and he was allotted a punishment in the penitentiary for such felony. The court could only authorize the conviction for the misdemeanor. This charge is clearly wrong *and authorized a conviction for an offense not charged in the indictment.* (Italics ours.)

Art. 409 C. C. P. prescribes the form of indictment for murder as follows:

"A. B. did with *malice aforethought* kill D. C. by shooting him with a gun"; or "by cutting him with a knife."

It is true this form of indictment was specified many years ago under the old definition of murder. That an indictment under said form is sufficient has been held many times. (See Note 10, under Art. 1256, Vernon's Crim. Statutes of Texas, P. C., Vol. 2, page 449.) In amending the murder statute the 40th Legislature repealed many articles of the Code, but not 409, supra. We do not undertake to say what significance, if any, should be attached to this fact. We call attention to it because the Legislature knew of the provision of said Art. 409, and are presumed to have known that indictments following the form had been sustained by this court. The old form has been held good since the Act of the 40th Legislature became the law. (See Crutchfield v. State, 110 Tex. Cr. R. 420, 10 S. W. (2d) 119). If the allegation in the present indictment that appellant killed deceased "voluntarily" by shooting him with a gun charges that the killing was done with malice aforethought, then, of course, the indictment is sufficient to support the verdict and judgment; but does the mere allegation that a killing was done *voluntarily* include malice aforethought? The reasoning of Judge White in the case of Hayes v. State, 14 Tex. Cr. App. 330, is so pertinent and so forcible, and answers the question so conclusively that we quote from that opinion. The defendant in that case was being tried for assault with intent to murder. The court charged as follows:

"Malice aforethought is the voluntary doing of an unlawful act with the intent, means and ability to accomplish the reasonable and probable consequences of it."

In discussing the charge Judge White said:

"The definition of 'malice aforethought' is not correct; for, under it, a party may commit a killing which would be manslaughter only. 'The voluntary doing of an unlawful act, with the intent, means and ability to accomplish the reasonable and probable consequences of it' would be manslaughter if it was the result of sudden passion, and upon an adequate cause. Or 'the *voluntary doing of an unlawful act, with the intent*, means and ability to accomplish it,' *may apply as well to aggravated, and even simple* assaults; or, in fact, to any other felony or misdemeanor known to the Code, if the same is dependent upon act and intent, and which is not dependent for its criminality upon the existence of malice aforethought. 'Malice aforethought' means something in itself, and cannot be a condition only which is equally applicable to most offenses other than murder. To constitute

murder, or assault with intent to murder, the act must be voluntary; it must be unlawful; it must have been done with the means and ability to accomplish it; and, over, above, beyond and besides these, and in connection with these, it must also have been done with malice aforethought. Such other ingredients may be essential in part, as evidence of, but they are not, and cannot be said to be, malice aforethought. 'Malice aforethought is a condition of the mind which shows a heart regardless of social duty and fatally bent on mischief, the existence of which is inferred from acts committed or words spoken." (Italics are ours.) It is true the opinion in the foregoing case was written at a time when manslaughter was a part of our law, but whether the killing was manslaughter depended upon the state of mind of the slayer and the conditions which brought about such state of mind. Subsequent opinions which may be interesting to examine regarding the same matter will be found collated in Collins v. State, 108 Tex. Cr. R. 72, 299 S. W. 403.

It is suggested in the state's motion for rehearing that Section 3a heretofore quoted in this opinion provides for "amelioration or mitigation" of punishment, in the absence of certain mental elements at the time of the killing. If it is intended by this suggestion to present the question that Section 3a provides for defensive matter to be interposed by an accused upon trial for murder, and this should be accepted as the correct interpretation, then we would have a most peculiar situation. If such be defensive matter under the terms of Art. 46 P. C. the burden would be upon accused to prove the absence of "malice aforethought" the very thing the presence of which the state must depend upon before it could demand punishment in excess of five years in the penitentiary. The mere statement of the contention appears to demonstrate its unsoundness.

We cannot escape the conclusion reached in the original opinion that where the state intends to ask for a penalty exceeding five years in the penitentiary upon a murder prosecution the indictment must allege that the killing was done with "malice aforethought." This was suggested in the opinion on rehearing in the Crutchfield case, 110 Tex. Cr. R. 420, 10 S. W. (2d) 119. It was merely a suggestion because all that was said regarding the matter was recognized to be dicta in that case. The writer is firmly of the conviction that where the state expects to ask for a penalty of more than five years, the simplest form of indictment would be to allege in a single count that the accused did "voluntarily and with malice aforethought" kill, etc. This would seem to embrace all of the elements necessary under

the present statute, and would support a judgment assessing any penalty provided.

The state's motion for rehearing is overruled.

*Overruled.*

MORROW, P. J., dissents.

ON STATE'S MOTION FOR REHEARING.

MORROW, PRESIDING JUDGE.—(dissenting) The soundness of the conclusion stated in the original opinion, namely, that in a trial for murder where a penalty of more than five years' confinement in the penitentiary is sought it is essential that the indictment charge that the accused acted with malice aforethought, is assailed. In interpreting the new murder statute embraced in Chapter 274, Acts of the 40th Legislature, Regular Session, it is, of course, the duty of this court to give effect to the legislative intent if it can be ascertained from the words employed in writing the statute. To the mind of the writer, it occurs that in enacting subdivision 3-a of the act, the Legislature regarded the terms in which the offense of murder was defined as embracing "malice aforethought" and that in directing that the court should define malice aforethought, and apply that term in appropriate charge to the facts in the particular case, it was not implied that malice aforethought was not a part of the offense of murder as defined, but was rather to make it plain that it was a part of the law of murder as defined and that the jury was to be so instructed in an appropriate charge; that is, one not prescribed by the Legislature but left to the sound discretion of the trial court to apply the term "malice aforethought" to the particular facts arising in the case on trial. That in the use of the language in the statute in which the offense is defined, the meaning is the same as though the words "malice aforethought" were used in the definition is, we think, illustrated by numerous decisions of this court and of the Supreme Court of this state during the period of time when it took cognizance of criminal cases. No authentic definition of the term "malice aforethought" has ever been adopted by the Legislature or by the courts of this state.

Malice aforethought has been defined as the voluntary and intentional doing of an unlawful act by one of sound memory and discretion, with the purpose, means and ability to accomplish the reasonable and probable consequence of the act; and includes all of those states of mind under which the intentional killing of a person takes

place without any cause which will, in law, justify, excuse or extenuate the homicide.

Using different words but embracing the same idea the courts of this state have defined malice aforethought in their instructions to the jury. Having in mind the definition above mentioned and the fact that there is in this state no standard, by statute or otherwise, for the interpretation of the words used in the statute and no specific direction therein that "malice aforethought" shall be in the indictment, it would seem that an indictment in the terms of the statute would sufficiently charge the offense of murder for all purposes. It is a general rule that an indictment phrased in the language of the statute denouncing an offense will support a conviction for the offense.

Prior to June 15, 1927, the offense of murder in this state was defined thus:

"Whoever with malice aforethought shall kill any person within this State shall be guilty of murder. Murder is distinguishable from every other species of homicide by the absence of circumstances which reduce the offense to negligent homicide or manslaughter, or which excuse or justify the homicide." (Art. 1256, P. C., 1925.)

On June 15, 1927, there became effective an enactment of the 40th Legislature changing the definition of the offense of murder. The act is embraced in Chap. 274, Acts of the 40th Legislature. In Section 3 of the Act conflicting laws were repealed. The law of manslaughter was also repealed and murder defined thus:

"Whoever shall voluntarily kill any person within this state shall be guilty of murder. Murder shall be distinguished from every other species of homicide by the absence of circumstances which reduce the offense to negligent homicide or which excuse or justify the killing."

The article further states:

"The punishment for murder shall be death or confinement in the penitentiary for life, or for any term of years not less than two."

In Article 1257-a it is declared in substance that upon the trial all relevant facts and circumstances surrounding the killing and the previous relations of the parties, and all relevant facts and circumstances going to show the condition of the mind of the accused at the time of the homicide shall be received in evidence and may be considered by the jury in determining the punishment to be assessed.

In Sec. 3, Chap. 274, supra, it is declared that the law of manslaughter" and all other laws in conflict herewith are hereby repealed."

Section 3-a reads as follows:

"In all cases tried under the provisions of this Act, it shall be the duty of the Court to define 'malice aforethought' and shall apply that term by appropriate charge to the facts in the case and shall instruct the jury that unless from the facts and circumstances in evidence the jury believes the defendant was prompted and acted with his malice aforethought, they cannot assess the punishment at a period longer than five years."

Under the old statute the form of indictment for murder was prescribed by the Legislature as follows:

"A B did, with malice aforethought, kill C D by shooting him with a gun."  (C. C. P., Art. 409.)

In the present instance the charging part of the indictment reads thus:

". . . did then and there unlawfully and voluntarily. kill and murder H. J. Hendrix, by then and there shooting him with a gun."

It seems manifest that murder, as defined in the present law, embraced the idea of malice aforethought as it was understood at the time the act was passed. If it were not so, malice aforethought could not become a substantive part of the offense by embracing it in the indictment. Both the Bill of Rights and the statute, as interpreted, require that all penal offenses be in writing. See Art. 3, P. C., 1925; Art. 1, Sec. 10, Const. of Texas. Without doing violence to this fundamental principle which pervades our criminal law, malice aforethought could not be made a part of the offense by embracing it in the indictment, but could become so only by virtue of the fact that it was included in the definition of the offense. The first subdivision of Article 1256, supra, apparently denounces as murder *every form of culpable homicide other than those specifically excepted in the statute.* It, therefore, necessarily embraces a *culpable homicide prompted by any form of malice including malice aforethought.* Malice aforethought denotes the state of mind of the slayer immediately preceding the unlawful act which results in the death of his adversary. Premeditation is an essential element of malice aforethought. Art. 1256, supra, as embraced in the new statute defining murder, includes all *voluntary culpable homicides,* but *every voluntary culpable homicide is not necessarily upon malice aforethought.* In adjusting the penalty that may be assessed under the new statute defining murder, note is taken of the principle above stated, namely, that a homicide may be intentional, neither justified nor excused, and yet not prompted by malice aforethought. It is

clear that an indictment charging in the language of the statute (Art. 1256, P. C.) the offense of murder is in no sense a void indictment. In such an indictment one is charged with murder, which is *distinguishable from every other species of homicide by the absence of circumstances which reduce the offense to negligent homicide or which excuse or justify the killing*. The language last quoted is equivalent to the definition of malice aforethought as found in the dictionary and in many of the reported cases in our own and other jurisdictions. See Webster's New International Dictionary, page 1305; Words & Phrases, 3d Series, Vol. 4, p. 1060; Cyc. of Law & Proc., Vol. 21, p. 706; Stevens v. State, 42 Tex. Cr. R. 154; Cain v. State, 42 Tex. Cr. R. 210.

The indictment in the present case contains the language of the statute and more, namely, that the accused "did then and there unlawfully and voluntarily kill and murder H. J. Hendrix by then and there shooting him with a gun." It is challenged alone upon the ground that there is an absence of the words "with malice aforethought." There is an exception to the rule holding an indictment sufficient if in the language of the statute. The exception, however, pertains to instances in which greater particularity is required either from the obvious intention of the Legislature or from the application of known principles of law. The cases applying the exception, in the main, were decided at a time when criticisms of the court's rulings were available when first made on motion for new trial,—a rule which is no longer in force. In some of them it appears affirmatively that the action on appeal was in response to motions to quash the indictment. In none of them does it appear that complaint was made of the defect for the first time on appeal.

If it be a fact that the term "voluntary killing," as used in the statute, may include a killing *with* malice aforethought or *without* malice aforethought, an indictment couched in the language of the statute might be indefinite to a degree, but it obviously embraced both phases of the offense of murder named in the statute. Apparently, therefore, the indictment, if faulty, comes within the class which, when attacked *in limine,* may be quashed for absence of certainty; that is, in the class in which upon attack would require that an indictment be drawn to contain words in addition to those set forth in the statute. Without an attack *in limine,* however, the contrary rule would prevail, that is, an indictment embracing in general terms both phases of the offense would support a conviction of either.

It seems clear that if the statute is valid, the indictment following the language of the statute would be invulnerable except upon attack before entering the plea. That the indictment is indefinite would carry with it the conclusion that the statute was indefinite. In other words, if it is contended that the language of the statute embraced in an indictment does not charge both phases of the offense of murder, then the statute does not do so. It must be conceded that by reason of the novelty of the statute and the manner in which it is drawn its interpretation is extremely difficult. That its validity, however, is not an open question has, upon full consideration by the decisions of this court, been repeatedly upheld. In the case of Davis v. State, 10 S. W. (2d) 118, it is said:

"We are further of the opinion that his attack upon the law, as being indefinite, vague, uncertain, ambiguous, and unintelligible, cannot be sustained."

The validity of the statute was specifically declared by the court in Mercer's case, 13 S. W. (2d) 689 (see p. 691). In numerous cases, by affirmances of convictions for murder under the new statute, it has, without discussion, at least been inferentially treated as valid. Among these are Lawrence v. State, 18 S. W. (2d) 181. Illustrative of the fact that the sufficiency of an indictment in the language of the present statute is one upon which trained minds may differ is the experience of this court in the instant case and in others in which it has expressed itself by way of dicta as regarding valid an indictment which was in the language of the statute and still others in which convictions for murder have been sustained where the indictment was in the same language as that under consideration in the present appeal. See Crutchfield v. State, 10 S. W. (2d) 120; Mercer v. State, supra; and Lopez v. State, 17 S. W. (2d) 807, in which the judgments were sustained. To these matters reference is made to illustrate the fact that the precedents furnish no exact criterion for the interpretation of the law with which we are now dealing. In construing the statute the court is placed in a situation rendering it necessary, without authentic guide, to act upon its own judgment. No measure is at hand by which the correctness of the decision reached in interpreting the statute can be demonstrated. The language of the statute, as above pointed out, having been judicially determined sufficient to embrace both phases of the offense of murder, it would seem inevitably to follow that the indictment in the language of the statute would likewise embrace both phases of the offense. If it be granted that (as has heretofore been indicated by

this court in the opinion on motion for rehearing in Crutchfield's case, supra), in drawing the indictment it would be better to include the words "malice aforethought," or if it be contended that without such words there would be a lack of certainty in the indictment, leaving the accused without sufficient information as to whether the State would seek the higher penalty prescribed by the statute, the omission, in the opinion of the writer, would not be of a fundamental nature. Under the assumed conditions stated above, advantage of the omission would not be available to the accused unless, before pleading, he made a motion to quash the indictment for uncertainty. In our system of practice it is fundamental that one accused of crime may not speculate upon the result but must promptly assert his right to the observance of the rules of procedure or by his silence waive it.

In its charge the court embraced the definition of murder contained in the statute. It also charged the law of malice aforethought and charged the jury that if the offense was prompted by malice aforethought, the penalty might be any term not less than two years or death. These instructions were given without opposition upon the part of the appellant, and without any objection reserved to the charge of the court upon the grounds mentioned. An analysis of the position in which the appellant stood is that the court is in error, but if the trial results in my favor I will be content; if the verdict is against me, the error that the court has committed and of which I am making no objection will redound to my benefit in securing a new trial or a reversal. It is against such result that the procedure statutes are directed,—particularly that in which it is declared, "all objections to the charge and to the refusal or modification of special charges shall be made at the time of the trial. Art. 666, C. C. P. Articles 658, 659 and 660, require that before the charge is read to the jury it shall be submitted to the appellant or his counsel for examination. Under these articles of the statute, it is incumbent upon the court, after writing his charge, before it is read to the jury and before argument, to submit it to counsel for the accused for examination. It is the duty of counsel for the accused, upon examination of the charge, to advise the trial court of any objections to the charge because of defects, either affirmative or negative, which may appear to him and to bring forward on appeal in writing exceptions to the refusal of the court to make corrections, and upon so doing the charge will be reviewed on appeal. Otherwise it will not be reviewed unless it contains faults of a fundamental nature which cannot be waived.

In view of the opinion of this court upon the original hearing and in contemplation of another trial, the writer has deemed it proper to express his views touching the indictment. There is in the record, however, a bystanders' bill of exception properly prepared and authenticated by the affidavits of three citizens in which the following appears:

"Be it remembered that upon the trial of the above entitled and numbered cause, the District Attorney in his closing argument to the jury, while pointing his finger at the defendant, said: 'This man committed a crime in this county forty years ago and has been living that kind of a life ever since, and as soon as the people of Liberty County get rid of him the better and safer place it will be to live. There is in that physical wreck of a man a vile and vicious disposition and a heart that is black plumb through.' "

There are no controverting affidavits. The bill recites that the argument was supported by no evidence introduced upon the trial; that the character or the reputation of the accused was not put in issue; that the remarks were dehors the record. The appellant did not testify as a witness. In our examination of the statement of facts, we have been unable to perceive any evidence which would warrant the argument. In a bill prepared by the court it is stated that a part of the argument was not made. The statute permitting a bystanders' bill (Art. 2237, Revised Civil Statutes, 1925, subdivision 9), reads as follows:

"Should the party be dissatisfied with said bill filed by the judge, he may, upon procuring the signatures of three respectable bystanders, citizens of this State, attesting to the correctness of the bill as presented by him, have the same filed as part of the record of the cause; and the truth of the matter in reference thereto may be controverted and maintained by affidavits, not exceeding five in number on each side, to be filed with the papers of the cause, within ten days after the filing of said bill and to be considered as part of the record relating thereto."

Commenting upon a like situation, Judge Davidson, in writing the opinion of this court reversing a judgment assessing the death penalty solely upon the ground that an inflammatory argument dehors the record had been made, declared that in the absence of controverting affidavits filed in accord with the statutory provisions quoted, a bystanders' bill imports verity. See Hemphill v. State, 72 Tex. Cr. R. 639; Pye v. State, 71 Tex. Cr. R. 94; Marshall v. State, 76 Tex. Cr. R. 386. In the state of the record, this court is bound

to treat the bystanders' bill as speaking the truth. That the argument was calculated to inflame the minds of the jury and transcended legitimate argument is without question. It is obviously harmful and of a nature to require a reversal of the conviction assessing against the accused a penalty of imprisonment for life.

For the reasons stated, the State's motion for rehearing should be overruled.