JIM SAFFEL v. THE STATE.

No. 15201. Delivered May 11, 1932.
Rehearing Denied June 22, 1932.
Reported in 51 S. W. (2d) 393.

The opinion states the case.

*Stinson, Hair, Brooks & Duke,* of Abilene, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

CALHOUN, JUDGE.—The offense, murder; the punishment, twenty-five years in the penitentiary.

The evidence in this case is very voluminous, and we deem it only necessary to give a brief summary of the most material facts. It seems from the state's evidence that the homicide occurred on the 13th day of June, 1931, about 12:30 o'clock. It further appears from the evidence of the state that the deceased, Bill Windham, and his cousin, Frank Windham, were taking some mules and a cow to a watering place, which required them to pass in front of appellant's blacksmith shop. As the deceased and Frank Windham passed the shop, it was shown that the appellant called them and said, "Howdy," to which the deceased replied, "Go to hell." The deceased and the said Frank Windham then carried their stock on to water, and on returning wiht said stock they were accosted by the appellant, who stated that they might as well have a settlement of their difficulties now, and the deceased replied to the appellant that if he wanted to, to come on out. The state's evidence further shows that about this time the appellant fired a shotgun and inflicted a wound upon the deceased, Bill Windham, from the effects of which he died in a few minutes; that at the time the deceased was shot he was standing still and was holding a rope by which he was leading the cow which he had taken to water; also that Frank Windham was standing still at the time the deceased was shot. The state's evidence further showed that the appellant then reloaded his gun and also shot Frank Windham. The state claimed that about a week prior to the homicide the appellant had been guilty of insulting conduct towards the wife of Frank Windham which had been communicated to the said Frank Windham.

Appellant sought to justify his action on the grounds of self-defense, contending that the deceased had an open knife in his hand and was advancing towards him at the time he shot him, and also that Frank Windham had a knife in his hand and that the shots were fired by him

in self-defense against both the joint and several attacks of the two Windhams. There was testimony also offered for the appellant tending to show that Frank Windham had conceived the idea of something being between his wife and the appellant and he was aroused by his suspicions, and was on the verge of insanity, and had been making threats against the appellant and had threatened to kill him; that these threats were communicated to the appellant prior to the homicide.

By bill of exception No. 2, appellant complains of the action of the trial court in requiring him. to exhaust a challenge on one W. J. Glenn. The bill shows that there appeared on the venire list the name of W. J. Gleen as juror No. 36; that said alleged juror was called, sworn, and examined by the state, and was turned over to defendant's counsel for examination, and that, upon being questioned by the defendant, the juror said his name was not W. J. Gleen, but was W. J. Glenn, whereupon appellant's counsel challenged him as not being the person whose name appeared on the venire list furnished him, contending that the juror was not acceptable to him as a juror. The court overruled appellant's objection and refused to discharge the juror and held that he was a proper and competent juror, to which action appellant excepted. The bill further states that, after further examination of said juror, the said juror by answers to questions had not disqualified himself, and disclosed no ground for a challenge save that heretofore stated. The court refusing to sustain appellant's challenge, the appellant then and there exercised his sixth peremptory challenge on said juror, and said juror did not sit in the case but was excused upon the peremptory challenge of the appellant. The bill further shows that, after eleven jurors had been selected by both sides and sworn in as jurors, the defense had exhausted their fifteen peremptory challenges and had none left, and thereupon a prospective juror by the name of C. E. Phelps was presented as a juror, examined, and duly qualified and was accepted by the state and was sworn in as the twelfth juror in this case. The contention of the appellant in his bill was that had he had another challenge left, he would not have taken said twelfth juror. In the bill, no reason is given why the juror Phelps was objectionable to appellant, and the only injury to appellant as claimed in said bill was to the effect that it was shown by the evidence on appellant's motion for new trial that, after the jury had retired to consider their verdict, juror Phelps voted on the first ballot for 25 years, and that his ballot was never changed. It was also shown that on the first ballot one man voted for acquittal, two or three voted for 5 or 10 years, and two voted for 99 years.

In the bill, no reason is given why the juror Phelps was objectionable to the defendant, and no injury to defendant is shown by reason of his being on the jury. It is not claimed that the juryman Phelps had any previously formed opinion or had any bias or prejudice against the defend-

ant. As shown by the bill, there was no error of which appellant can complain. See Johnson v. State, 108 Texas Crim. Rep., 499, 1 S. W. (2d) 896; Berg v. State, 64 Texas Crim. Rep., 612, 142 S. W., 884.

Bill of exception No. 3 complains of the following proceedings: While the witness Frank Windham was on the witness stand, he was asked if he knew the defendant, Jim Saffel, and he answered, "Yes." He was then asked how long he had known him and he answered twelve years. He was then asked by the state, "What has been the nature of your acquaintance with him?" and the witness immediately, without giving time for an objection, answered, "He has an awfully bad character." Appellant's counsel objected to said answer and moved to exclude it, and the court, without waiting for defendant's counsel to finish his objection, stated to the jury: "Gentlemen, you will not consider the answer to the question for any purpose. Just consider it as though it had never been answered. Now, Mr. Windham, let me admonish you now at the start of the case, you will be kind enough to answer the questions asked you and if you do not have an answer to question, say so, and do not volunteer any further information."

Appellant contends that, notwithstanding the prompt action of the court, that said testimony was harmful and prejudicial to the defendant and contributed to his conviction because it was shown on the hearing of evidence on appellant's motion for new trial that one of the jurors made the remark, "Why didn't they put a character witness on the stand for Jim Saffel?" It is shown by the record in this case that the juror who testified to the remark having been made also stated that he did not know what juror asked the question; that he just made the remark, and to the best of his memory the remark was entirely ignored by the entire jury. Another juror testified that he did not hear the statement. It was also stated by another juror that he did not think he heard any talk in the jury room as to why the defendant did not put his character in issue; that there was something mentioned about that after the jury was dismissed and they were on their way home. No other jurors testified as to what occurred in the jury room.

The question asked by the district attorney did not call for the answer of the witness, and the court promptly sustained the objection to said answer, and instructed the jury to disregard the same and not consider it for any purpose. There is nothing in the record which would seek to show that the question asked the witness was not asked in good faith, and ordinarily, when the court promptly sustains an objection to a question and the answer thereto, no error is presented unless the question is of such nature as to be extremely hurtful. The opinion is expressed that reversible error is not shown by this bill. See Childress v. State, 92 Texas Crim. Rep., 215, 241 S. W., 1029; also Hunter v. State, 113 Texas Crim. Rep., 90, 18 S. W. (2d) 1084.

By bill of exception No. 4, appellant complains of a number of remarks made in the argument of the special prosecutor, some of which criticize defendant's lawyers in the conduct of the case, and there is presented a lengthy bill to said argument containing such arguments, the objections of the appellant, and the remarks of the court. The bill shows that almost all the objections made by the appellant were sustained by the court and the jury instructed to disregard those parts of the argument objected to. The record also shows that all requested special instructions asking the jury to disregard the arguments objected to were given by the court at the request of the appellant. Some of the arguments complained of were proper as a deduction from the facts in evidence. A bill of exception which complains of argument, part of which is permissible and pertinent and part of which is improper, will not be held to present a complaint which will be sustained by the court. See Moore v. State, 107 Texas Crim. Rep., 287, 296 S. W., 308; Gray v. State, 109 Texas Crim. Rep., 481, 5 S. W.. (2d) 518.

By bill of exception No. 5, the appellant, among other things, complains of the refusal of the trial court to grant him a new trial because of the newly discovered evidence of a Mrs. C. D. Harrison and Mrs. Callie Sorrells. It is shown by the testimony taken on the hearing of the motion for new trial that Mrs. Harrison testified that she lived in Anson 26 years; that she heard Mrs. Frank Windham say very soon after J. W. Windham's death that Frank, her husband, had accused her of being too familiar with the defendant; that Mrs. Windham said that she was an innocent woman, and it was all Frank's imagination; that Frank was crazy and had threatened her. The testimony of Mrs. Callie Sorrells was to the following effect: That soon after the death of J. W. Windham she heard Mrs. Frank Windham say that her husband thought some one was trying to break up his home; that he had an iron under his pillow the night before the shooting, and that J. W. Windham took it away from him, and he said some one was trying to break up his home and when they came he would be ready for them; that Frank was always imagining such things, and she kept trying to get him to do something with Frank, and they would say to wait a while. The record shows that Mrs. Frank Windham was not a witness to the killing, and testified only in rebuttal for the state denying certain statements that she was alleged to have made, and she also testified that the appellant had made an insulting proposal to her, in which she was corroborated by her daughter.

In passing upon the motion for new trial on account of newly discovered testimony, the most that can be said of said testimony claimed as newly discovered evidence is that it could be only used to discredit or impeach the testimony of Mrs. Frank Windham. We therefore express the opinion the court did not err in overruling the motion for

new trial. "Newly discovered testimony which would not be admissible as original evidence, but which could only be used to discredit or impeach the testimony of a witness who had testified on the trial of the case, is not ordinarily ground for a new trial, and the discretion of the trial court in refusing a new trial sought to obtain such testimony will not be revised on appeal." Branch's Ann. P. C., sec. 202. See, also, Hawkins v. State, 74 Texas Crim. Rep., 452, 168 S. W., 93; Taylor v. State, 75 Texas Crim. Rep., 20, 169 S. W., 672; Woodland v. State, 57 Texas Crim. Rep., 352, 123 S. W., 141.

Appellant contends that the trial court committed material error in its main charge in defining "malice aforethought," to which an exception in writing was taken. In the charge of the court, "malice aforethought" is defined in the following language: "The term 'malice aforethought' in its legal signification means the intentional doing of an unlawful act without legal justification. It is a state or condition of the mind showing a heart regardless of social duty and fatally bent on mischief, the existence of which is inferred from acts committed or words spoken."

In the case of Herrera v. State, 117 Texas Crim. Rep., 389, 36 S. W. (2d) 515, this exact definition defining the term "malice aforethought" was excepted to as error. In passing upon said question, Presiding Judge Morrow, after quoting the definition given in the charge, used the following language: "The definition is one that has frequently been approved by the decisions of this court. See Harris v. State, 8 Texas App., 109; Ellis v. State, 30 Texas Crim. Rep., 604, 18 S. W., 139; Swilley v. State, 114 Texas Crim. Rep., 228, 25 S. W., 1098. It is quite true, as contended by the appellant's counsel, that the intentional doing of an unlawful act without legal justification, standing alone, is not a sufficient definition of malice aforethought. See Hayes v. State, 14 Texas App., 331. However, when the expression last mentioned is accompanied by the additional statement as contained in the subdivision of the charge quoted above, it has been approved as a sufficient definition. Among the cases so holding is Collins v. State, 108 Texas Crim. Rep., 72, 299 S. W., 403."

To the same effect is the holding in the recent case of Spicer v. State, 119 Texas Crim. Rep., 87, 46 S. W. (2d) 685.

In appellant's exception to the court's charge, he excepted to paragraph 10 of said charge, and especially to the last sentence of said paragraph where the court was charging on the amount of punishment to be assessed if the jury believed that the defendant's mind was incapable of cool reflection at the time of the homicide. That part of the charge complained of was as follows: "You are charged that if you have a reasonable doubt that the defendant's mind was incapable of cool reflection at the time of the homicide, if any, you will give him the benefit of the

doubt and assess his penalty at a period longer than 5 years in the state penitentiary, even though you should find the defendant guilty."

The principal question is that growing out of the omission of the word "not" in the paragraph mentioned of the charge. This omission was improper, and, unless harmless under the rules embraced in article 666, C. C. P., the error will be sustantial. The article mentioned provides in substance that an inaccuracy in the instructions to the jury will not authorized a reversal of the judgment, unless it appears from the record that it was calculated to injure the rights of the accused, or unless the record discloses that the trial had not been a fair and impartial one. In paragraph 10, immediately preceding that part of the paragraph complained of, the court in substance charged the jury that, "if from the acts, words, and conduct of the said J. W. Windham and Frank Windham, or either of them, or from the acts or words of both or either of them at the time of the homicide, taken into connection with any or all acts, words, or conduct of the deceased, J. W. Windham, or Frank Windham, or either of them, prior to the homicide, taken in conenction with the knowledge the defendant had of the character of J. W. Windham, taken into connection with any threats on the part of Frank Windham or J. W. Windham, or either of them, communicated to defendant, or when taken alone or in connection with all or any of the relevant facts and circumstances in evidence, there was produced in the mind of the defendant such a degree of anger, rage, resentment, or terror as to render his mind incapable of cool reflection, and while in such state of mind the defendant voluntarily shot with a gun and thereby killed the deceased, J. W. Windham, and not in self-defense, then even though you should find the defendant guilty of murder, you could not assess his pnishment at a period longer than five years in the state penitentiary." Then followed that part of the section complained of.

In paragraph 9, the court instructed the jury in substance that "if the jury believed from the evidence that at the time of the killing, defendant's mind was in a passion adduced or raised by adequate cause, as therein before defined, or if they had a reasonable doubt thereof, then they could not assess defendant's punishment for a period longer than five years in the state penitentiary even though they should find the defendant guilty."

Again, in paragraph 11, the jury are told that, even if they believed from the evidence beyond a reasonable doubt that the defendant killed, J. W. Windham, they could not assess his punishment for a period longer than five years in the penitentiary, unless they further believed from all the facts and circumstances in evidence beyond a reasonable doubt that appellant was prompted and acted with malice aforethought.

This attack on paragraph 10 of the charge when considered (as it must be) in connection with that which preceded it in said paragraph

and also in connection with that which preceded it in said paragraph and also in connection with paragraphs 9 and 11 of the charge, could not have misled the jury in assessing the punishment by the omission of the word complained of in paragraph 10. In view of the record and the court's charge as a whole, we are of the opinion that the part complained of in paragraph 10 of the charge, to which we have adverted, is not of a nature which in view of article 666, C. C. P., will authorize a reversal of the judgment.

We have not undertaken to discuss all of the many exceptions taken to the court's charge found in the record. A careful examination of every contention made by appellant leads us to the conclusion that reversible error is not presented.

No reversible error appearing in the record, the judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—One ground of appellant's motion for rehearing is predicated upon the assignment that we were in error in holding that the omission of the word "not" in the last sentence of paragraph 10 of the charge could not have misled the jury in fixing the punishment. As supporting the contention we are referred to Perkins v. State, 117 Texas Crim. Rep., 415, 37 S. W. (2d) 163; Shannon v. State, 117 Texas Crim. Rep., 429, 36 S. W. (2d) 521; Henry v. State (Texas Crim. App.), 54 S. W., 592. It would extend this opinion on rehearing to unreasonable length to review the cases mentioned, but from our examination of them it is thought that by reason of varying facts they do not furnish a precedent supporting the contention here urged. Upon the question we think Clampitt v. State, 3 Texas App., 638, and Goolsby v. State, 59 Texas Crim. Rep., 528, 129 S. W., 624, are much stronger cases for appellant than those mentioned. In this connection Cromwell v. State, 59 Texas Crim. Rep., 525, 129 S. W., 622, is also noted. In Goolsby's case the principle which seemed to govern was that "where a word is omitted from a sentence that an intelligent mind would supply to make the sentence complete, it would not be cause for reversal." It was recognized in the original opinion that if the sentence from which the word "not" was omitted had been the only place in the charge where the subject was treated such omission would have called for a reversal. However, the only way article 666, C. C. P., may be given effect is to consider the charge in its entirety. When that is done in the present case, having reference to what the court had told the jury in paragraphs 9 and 11, and considering them in connection with the whole of para-

graph 10, we think it not unreasonable to reach the conclusion that the omission complained of could not have injured appellant.

Serious complaint is made in the motion for rehearing at our disposition of appellant's bill No. 2 regarding the juror Phelps. Chief reliance is had on general statements regarding "objectionable" jurors found in Kerley v. State, 89 Texas Crim. Rep., 199, 230 S. W., 163. The opinion in that case was written by Presiding Judge Morrow, and was dealing with an entirely different record than is found in the present case. In Kerley's case accused was held to have been entitled to fifteen peremptory challenges, and the court erroneously allowed him only ten. Therefore, while the language in the motion quoted by appellant from the opinion in Kerley's case is in general terms, it must be read in connection with the facts there dealt with. That opinion was written in 1921; in 1928 the same author wrote the opinion in Johnson v. State, 108 Texas Crim. Rep., 499, 1 S. W. (2d) 896, where he was dealing with the exact question found in the present case, and the views there expressed support the conclusion announced in our original opinion. See, also, Hudson v. State, 28 Texas App., 338, 13 S. W., 388 (which is quoted from with approval in Johnson's case); Loggins v. State, 12 Texas App., 65; Carter v. State, 45 Texas Crim. Rep., 430, 76 S. W., 437; Grille v. State (Texas Crim. App.), 20 S. W. (2d) 424; Cox x. State, 115 Texas Crim. Rep., 83, 29 S. W. (2d) 346.

It is not thought the two other points presented in the motion for rehearing require further discussion than is found in our original opinion. The conclusion there reached regarding them is deemed correct.

The motion for rehearing is overruled.

*Overruled.*