# NOVEMBER 8, 1939

### ALVIN COLLINS v. THE STATE.

No. 20456. Delivered June 7, 1939.
Rehearing Denied November 8, 1939.

The opinion states the case.

*Sanders & McLeroy,* of Center, for appellant.

*Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

KRUEGER, Judge.
The conviction is for theft of cattle; the punishment as-

sessed is confinement in the State penitentiary for a term of two years.

In order to intelligently discuss the question presented for review, we deem it proper to briefly state the testimony as reflected by the record.

About the middle of the month of December, 1938, Haywood Wesley, an old negro, who lived on a farm in Panola County, missed two of his cows from the range where they were accustomed to run. Milton Graves testified that during the year 1938, he lived on appellant's farm at the time Haywood Wesley's cows disappeared. That on the morning of December 16th, appellant came to his home before day, awakened him and requested him to come and assist in loading some cows. When they had arrived at appellant's home, Wesley Reynolds was there in a pickup truck. They loaded two of the cows in said truck, which appellant and Reynolds drove away. On the same day, Bud Payne, who had a mortgage on the cows, went to Mansfield, Louisiana, where the regular Friday auction sale of cattle was in progress. While there, he saw appellant and Reynolds. He also saw two of the cows belonging to Haywood Wesley in the sale lot. Payne inquired of appellant from whom he had gotten the cattle and appellant replied that he had acquired them from Wesley Reynolds. About fifteen minutes later, appellant called Payne aside and stated that he had gotten the cattle from his negro, and his negro had gotten them from Haywood Wesley. Payne then informed appellant that he, Payne, had a mortgage on the cattle and he would have to stop the sale of the cattle, whereupon appellant offered to pay him for them. Payne, however, declined to accept any money. A little later appellant again approached Payne and inquired of him if there was not some way they could settle it, and at the same time remarked: "I am afraid somebody is going to go to the penitentiary, and I am afraid it will be my negro." Appellant seemed to be very much exicited at the time. Appellant and Reynolds took the cattle back and turned them out on their accustomed range. Later in the same day appellant went to see Wesley and asked him if he had sold any cows to Milton Graves to which Wesley replied that he had not. He then said that Graves traded them to him and he carried them to Mansfield, where Mr. Payne recognized them. He further testified: "I brought them back and turned them loose. I skinned one of them up and I believe it is right to give you $2."

Appellant testified in his own behalf and denied stealing the cattle. He stated that he bought them from Milton Graves,

who claimed to have purchased them from the owner, Haywood Wesley. That after he had acquired the cattle, he engaged Wesley Reynolds to haul them to Mansfield. That after Payne had talked to him and told him that he, Payne, had a mortgage on the cattle, he repurchased them from the party to whom they had been sold and returned them to their accustomed range.

From this brief statement of the facts, it will be seen that an issue of fact was raised which the jury decided adversely to appellant's contentions.

Appellant objected to the court's instruction relative to the law of voluntary return of stolen property, on the ground that it was an instruction on the weight of the evidence and practically told the jury that appellant had been detected before the cattle were returned. It is our opinion that the charge is not subject to the criticisms addressed thereto when the entire charge is considered as a whole. However, we are not convinced that under the testimony, appellant was entitled to such an instruction. The uncontroverted testimony shows that the cattle were stolen by some one and placed in appellant's lot sometime during the night of December 15. They were loaded by appellant, Reynolds and Graves before daylight on the morning of the 16th and carried to Mansfield, Louisiana, and there sold by appellant. Payne inquired of appellant as to where he had gotten them, to which appellant replied that he had acquired them from Reynolds, but in about fifteen or twenty minutes, he changed the story and stated that he had gotten them from his negro.

Apellant was found in possession of recently stolen cattle and had sold them when he learned that he had been detected.

Conceding that the issue was fairly raised, it will be noted that the court further instructed the jury as follows:

"13. If you believe from the evidence that the cattle in question had been taken from the possession of Haywood Wesley and were not in his possession at the time the defendant, Alvin Collins took possession of the same you will find the defendant not guilty, or, if you have a reasonable doubt as to whether such are the facts you will find the defendant not guilty.

"14. If you believe from the evidence that the Defendant Alvin Collins, purchased the cattle in question from Milton Graves, you will find the defendant not guilty, or if you have

a reasonable doubt thereof you will find the defendant not guilty.

"15. If you believe from the evidence that the cattle in question were taken from the possession of Haywood Wesley, by any person or persons other than Alvin Collins before they came into his possession you will find the defendant not guilty, or if you have a reasonable doubt as to whether such are the facts you will find the defendant not guilty.

"16. If you believe from the evidence that the cattle in question were taken from the possession of Haywood Wesley, by Milton Graves, or any other person, with the consent of the said Haywood Wesley, you will find the defendant not guilty, or if you have a reasonable doubt as to whether such are the facts you will find the defendant not guilty."

The trial court is not required to charge all of the law applicable to the case in one paragraph.

Appellant also objected to the court's charge on the law of accomplice testimony. We note that the court instructed the jury that Milton Graves was an accomplice and that a conviction could not be had upon his testimony unless corroborated by other evidence outside of the testimony of the accomplice tending to connect the defendant with the offense charged, etc. He then followed up the foregoing instruction with the following charge:

"Therefore, you are further instructed that you cannot convict the defendant, Alvin Collins, upon the testimony of the said Milton Graves unless you first believe that the testimony of the said Milton Graves is true and that it shows that the defendant is guilty of the offense charged * *; and even then you cannot convict the defendant unless you find that there is other evidence in the case outside of the evidence of the said Milton Graves, corroborating the testimony of the said Milton Graves and tending to connect the defendant, Alvin Collins, with the commission of the offense charged * *."

It is obvious that the instruction required the jury to find: (1) That the testimony of Milton Graves was true; (2) that it must show the defendant to be guilty of the offense charged, and (3) that there is other evidence, outside of the testimony of Milton Graves which corroborates his testimony and tends to connect the defendant with the commission of the offense charged.

In our opinion, the instruction, under the facts of the case, was sufficient. Milton Graves made a complete case of theft

against appellant. Appellant was found in possession of the recently stolen property in an adjoining state, where he had carried and disposed of it. When first questioned regarding his possession thereof, he explained the same by saying that he had acquired the cows from Reynolds, which he later repudiated. This was sufficient corroboration of the testimony of Graves and connected appellant with the commission of the offense. Consequently, the charge is sufficient. In support of what we have said, we refer to the following authorities: Graves v. State, 123 Tex. Crim. Rep., 226; 58 S. W. (2d), 122; Middleton v. State, 86 Tex. Crim. Rep., 307; 217 S. W., 1046; Whetstone v. State, 79 Tex. Crim. Rep., 104; 182 S. W., 1117.

Bill of exception number three reflects the following occurrence. While the Sheriff of Panola County was testifying for the State, he was asked by the District Attorney if he was acquainted with the general reputation of the defendant in the community where he resided and where he was best known for truth and veracity, to which appellant objected on the ground that he had not placed his reputation in issue. Thereupon the court inquired of the District Attorney if he had any authority at hand on the subject. He said no, but believed he could find some. Whereupon the court remarked: "On impeaching the defendant?" To which appellant again objected on the ground that it was an improper remark and a comment on the evidence. The court then instructed the jury as follows: "Gentlemen, I will instruct you again, as I have heretofore, that when an objection is sustained that takes away the question, the answer and everything else, any remark of the court in ruling upon the admissibility of testimony is not for the jury to consider at all."

Then the witness answered that appellant's reputation for truth and veracity was bad.

The remark of the court as shown in the bill is not, in our opinion, a comment on the weight of the evidence. However, the court's instruction withdrew the same from the consideration of the jury. Consequently, no reversible error is presented.

If appellant's objection went to the testimony of the witness, Hunt, relative to the appellant's reputation for truth and veracity, it is of no avail to him, because the same kind and character of testimony was given by Charlie Johnson and Sam Newman without objection.

It is a well settled rule in this State that when evidence is admitted without objection which is similar, or of like char-

acter to that objected to, no grounds for reversal is presented. See McLaughlin v. State, 109 Tex. Crim. Rep., 307; Sparkman v. State, 82 S. W. (2d) 972; Stephen v. State, 26 S. W. 728; Enix v. State, 112 Tex. Crim. Rep., 376, 16 S. W. (2d), 818; Rogers v. State, 80 S. W. (2d) 967.

By bills of exceptions numbers four and seven, appellant complains of certain remarks by the district attorney in his closing argument to the jury. These bills complain of a number of remarks and are therefore duplicitious and not entitled to consideration. Moreover, appellant levelled a general objection to the remarks, some of which were reasonable deductions from the testimony. For instance, the following: "Who put 'em on the range? The defendant and Wesley Reynolds, and I say to you that Reynolds is just as guilty as this man here; he ought to serve every day that this man (meaning the defendant) serves; he's right in there with him." This argument clearly finds support in the testimony.

Again, appellant complains of quite an extended remark by the district attorney, including the following: "* * Like I said in the beginning I have utmost sympathy for this woman (referring to appellant's wife) and I feel sorry for those children, but, bless your soul, if I was in here charged with cattle theft and if I had done what this man has done it would be a cold day in August, or a long time before I would come hiding and trembling behind my little children."

What is there that would stamp this argument as prejudicial and inflammatory? He had a wife and children and he may have been trembling. If so, there was nothing so highly improper therein as would call for a reversal of this case.

It may be that some of the remarks in the extended argument were improper and should not have been made, but in that case appellant should have specifically pointed out the same and addressed his objection thereto. See Saffel v. State, 51 S. W. (2d), 393 and authorities there cited.

Bills of exceptions numbers five and six are in the same condition as four and seven and they are overruled for the same reason.

All other matters complained of have been considered by us and are deemed to be without merit.

No reversible error appearing in the record, the judgment of the trial court is affirmed.

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

HAWKINS, Presiding Judge.

In his motion for rehearing appellant further insists that the charge given by the court on the issue of voluntary return of stolen property under Art. 1424 P. C. was on the weight of the evidence, and intimated that appellant was the thief. We are referred to Schultz v. State, 30 Tex. Cr. R. 94, 16 S. W. 756 and Eubanks v. State, 57 Tex. Cr. R. 153, 122 S. W. 35, in support of appellant's contention. The judgment in each of said cases was reversed because the court instructed on "voluntary return" of stolen property in the absence of evidence which raised the issue. It was not appellant's contention in the trial court that no charge should be given on the subject; on the contrary, after urging the objection that the charge given was on the weight of the evidence appellant says in connection with such objection the following:

"The Court is requested to change, correct and amend his main charge and incorporate therein an appropriate, affirmative instruction in the issue of the voluntary return of property, etc."

It will be seen, therefore, that the only question presented is whether the charge given on the subject was open to criticism as being on the weight of the evidence. Considering the charge as a whole we think it not vulnerable to said attack. In paragraph 9 the court stated the law as to "voluntary return." In paragraph 11 the court told the jury in appropriate language if they believed from the evidence beyond a reasonable doubt that appellant had stolen the animals in question and had *not* returned them voluntarily within a reasonable time before prosecution had commenced to find him guilty and assess his punishment at not less than two nor more than ten years in the penitentiary. In paragraph 12 of the charge the court appropriately told the jury if they believed beyond a reasonable doubt appellant had stolen the animals, but also believed, or entertained a reasonable doubt as to whether appellant voluntarily returned them before prosecution commenced, to find him guilty and assess his punishment at a fine not to exceed one thousand dollars. The court also gave the defensive charges referred to in our original opinion. Consid-

ering the charge in its entirety on the subject of "voluntary return" we think it not subject to the criticism directed to it.

The only other matter urged in appellant's motion is the complaint of argument of the district attorney relative to two questions. The first regarded a criticism directed by said attorney at Wesley Reynolds, who was a witness for appellant. We have examined the explanation of the court on the bill complaining of said argument, and also the statement of facts reflecting the testimony of said witness, and other evidence in the record pertinent thereto. Our judgment is that the district attorney was drawing legitimate conclusions from the evidence in the remarks made regarding said witness.

The other complaint of argument relates to statements of the district attorney regarding an unfortunate incident which occurred at the time the wife of appellant was on the witness stand testifying in behalf of appellant. A small child of appellant and the witness came into the court room and went to the mother while she was giving her testimony. During the argument of appellant's counsel he made no direct reference to the incident of the child coming into the court room, but "had pleaded with the jury that if they convicted the defendant that it would be a disgrace, not only to the defendant, but to his wife and these little children." In reply to said argument the district attorney used the language set out in our original opinion, and then referred to the incident of the little child coming into the court room while the mother was testifying. It is apparent from what he said that it was his opinion that counsel for appellant had caused the child to come into the court room as it did, hoping for a favorable effect therefrom on the jury. Appellant's counsel objected to the remarks of the district attorney, saying in the presence of the jury, "I object to that remark, if the Court please, on my honor as a gentleman and a practitioner, I didn't do any such thing * *"—that is, did not have the child come into the court room. The jury as reasonable men were bound to know that the district attorney was merely expressing his opinion as to the incident. Then we have over against such opinion the positive statement of appellant's attorney that he had nothing whatever to do with it.

The incident was unfortunate, and the remarks of the district attorney regarding it would perhaps have been better unsaid. However, it occurs to us that a jury of sensible men would not have used the circumstance as any ground upon which to base a conviction of appellant, especially so where the evidence in the record was ample upon which to predicate their ver-

dict. The fact that the lowest penalty was assessed is persuasive that no feeling was engendered against appellant as a result of the incident mentioned, and the remarks regarding same.

Appellant's motion for rehearing is overruled.